# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**GREGORY ALLEN JENNINGS,**

        Plaintiff,

   v.                                      Civil Action 2:17-cv-248
                                             Judge George C. Smith
                                             Magistrate Judge Jolson

**GARY MOHR, et al.,**

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Gregory Allen Jennings, a *pro se* prisoner, filed a Motion for Leave to Proceed *in forma pauperis* on March 24, 2017. (Doc. 1). Pursuant to 28 U.S.C. § 1915(a), that Motion is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. However, as explained below, the Court concludes this action cannot proceed.

Because Plaintiff is proceeding *in forma pauperis*, this Court must conduct an initial screening pursuant to 28 U.S.C. § 1915. The Court must dismiss the Complaint if it determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers...."); *Thompson v. Kentucky*, 812 F.2d 1408, No. 86-5765, 1987 WL 36634, at *1 (6th Cir. 1987) ("Although *pro se* complaints are to be construed liberally, they still must set forth a cognizable federal claim." (citation omitted)). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Applying those standards here, the Undersigned **RECOMMENDS DISMISSAL**. (Doc. 1-2).

I.  BACKGROUND

In the most general terms, Plaintiff brings an Eighth Amendment claim for deliberate indifference to his medical needs. The details of his claim, however, are difficult to decipher. In terms of physical complaints, Plaintiff states that he has "very sharp pains" "at the top of [his] cervical," where he has "screws" (Doc. 1-1 at 5, PAGEID #: 10) and back problems (*id.* at 9, PAGEID #: 14). Plaintiff states that he had surgery at Ohio State University, where they "took a lot out" and "almost lost [him]." (*Id.* at 5, PAGEID #: 10). Plaintiff also complains of "constant[ly] getting real hard headaches" that cause "the entire portion of [his] left side" to go "numb." (*Id.* at 11, PAGEID #: 16).

Plaintiff claims he fell getting out of the bathtub, and Defendant Nurse Kelly Haggard and others picked him up despite being "well aware" that "his neck was broken." (*Id.* at 7, PAGEID #: 12; *see also id.* at 9, PAGEID #: 14 (alleging generally that "medical officials put [him] in the wheelchair and put [him] in harm's way, considering [his] neck was broken already")). Plaintiff also complains that, at some later point in time, Defendants took the wheelchair away from him, which caused him to fall. (*Id.* at 11, PAGEID #: 16). Similarly, Plaintiff contends that two nurses improperly "took a device from [him]" before he left North Central Correctional Complex. (*Id.* at 7, PAGEID #: 12).

Plaintiff complains about the understaffing of medical personnel (*id.* at 6, PAGEID #: 11; *id.* at 9, PAGEID #: 14) and states that his requests for medication have been ignored (*id.* at 5, PAGEID #: 10). Plaintiff further claims, upon his transfer to a new institution, the medical

officials were never informed, as they should have been, about an "upcoming procedure" (*id.* at 10, PAGEID #: 15) and, prior to April 20, 2014, an "H.C.A. said they didn't have to honor taking [him] to Toledo University." (*id.* at 7, PAGEID #: 12).

Plaintiff also claims that Defendants have improperly limited his movement within the institution. In particular, Plaintiff asserts he was confined to his cell because he was in a wheelchair (*id.* at 8, PAGEID #: 13) and when Nurse Haggard was working, which "was everyday" (*id.* at 10, PAGEID #: 15). He also asserts that "the H.C.A. would not allow [him] to go farther than the front part of the infirmary." (*Id.*).

Plaintiff's primary complaint appears to be based on his interactions with Dr. DeLaCruz in the summer of 2014. (*Id.* at 6, PAGEID #: 11). According to Plaintiff, he revealed to Dr. DeLaCruz that he "was intending [to] bring charges against the Med. Officials in Allen for the wanton infliction of pain they caused [him]," to which she responded, "if you have a problem with any of my colleagues you and I will become enemies." (*Id.*). Plaintiff claims that Dr. DeLaCruz conducted only "basic checks," but concluded that his medications were unnecessary. (*Id.* at 9–10, PAGEID #: 14–15). Plaintiff further accuses Dr. DeLaCruz of "removing all important paperwork" to hide her actions. (*Id.* at 10, PAGEID #: 15).

Plaintiff asserts that "medical officials" have "done everything to make [him] give up the fight concerning [his] health" and to convince him "there was nothing wrong…." (*Id.* at 6, PAGEID #: 11). According to Plaintiff, tests showed "at the very beginning that [he] had a serious condition that required a specialist to deal [his] circumstances," but Defendants "tried to prove one thing. There was nothing wrong…." (*Id.* at 11, PAGEID # 16). He claims that "even at this point they are trying to get [him] to walk." (*Id.*).

Finally, in allegations seemingly unrelated to his health, Plaintiff complains of having to

3

rely on an officer to put his outgoing mail in the box and that "auditors" conducting an "internal audit" were "laughing at [him]." (*Id*. at 8, PAGEID #: 13).

## II. DISCUSSION

### A. Statute of Limitations

As an initial matter, it appears that Plaintiff's claim is untimely. Although the statute of limitations is normally an affirmative defense that must be raised by defendants in an answer, if the limitations bar appears on the face of the complaint, the Court may apply it during the initial screening process. *See, e.g.*, *Watson v. Wayne Cty.*, 90 Fed. App'x 814, 815 (6th Cir. Jan. 26, 2004) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*"). The statute of limitations for claims under 42 U.S.C. § 1983 is the two years. *See Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989). Plaintiff submitted his Complaint to this Court on March 27, 2017, so any claim that arose before March 27, 2015 generally would be considered untimely. *See id*. The allegations in Plaintiff's Complaint appear to have occurred in or before 2014. (*See* Doc. 1-1 at 6, PAGEID #: 11 (referencing 2014); *see also id*. at 7, PAGEID #: 12 (same)).

Plaintiff even acknowledges that his claim may be barred by the statute of limitations, stating that he never pursued his claim in Court and "took for grant[ed] the time of its expiration date." (*Id*. at 5, PAGEID #: 10). Plaintiff's fall while getting out of the bathtub appears to have occurred sometime in or before 2014 (*id*. at 7, PAGEID #: 12) (referencing an appointment scheduled for April 20, 2014, after the fall)), as does the allegedly improper interaction with Dr. DeLaCruz (*id*. at 5, PAGEID #: 10) (referencing the summer 2014)). Moreover, Plaintiff acknowledges that certain circumstances he complains of, such as understaffing, have improved since 2014. (*See, e.g.*, *id*. at 6, PAGEID #: 11 (discussing his transfer from C.R.C. and observing

4

that there is "no comparison been medical then and now"); *id.* (noting that "P.C.I. is has definitely tried picking up the pace" by hiring more individuals "to efficiently deal overcrowding of inmates"); *id.* at 9, PAGEID #: 14 (stating that it used to be that the institution "didn't have enough staff for inmate medical care," but "there seem[s] to be very quick treatment for an inmate these days").

Because Plaintiff's claim appears to be time barred, the Court **RECOMMENDS** that the Complaint be **DISMISSED**. *See, e.g.*, *Smith v. Warren County Sheriff's Dep't*, No. 1:10-cv-113, 2010 WL 761894, at *2 (S.D. Ohio Mar. 2, 2010) (applying the statute of limitations to a prisoner screening).

### B. Failure To State A Claim

However, to the extent that Plaintiff's claim may fall within the fairly limited circumstances that allow the continuing violation doctrine to apply to a § 1983 claim, *see Wilder v. Collins*, No. 2:12-cv-64, 2012 WL 1606035, at *3 (S.D. Ohio May 8, 2012), or may otherwise be considered timely, it is subject to dismissal for other reasons.

#### 1. Allegedly Inadequate Medical Treatment

Plaintiff must plead a facially plausible claim that Defendants acted with deliberate indifference to his medical needs. Such a claim has an objective and a subjective component. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). The objective component "requires a plaintiff to show that the medical need at issue is sufficiently serious," and the subjective component requires "that prison officials have a sufficiently culpable state of mind in denying medical care." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citation omitted) (quotations omitted). Moreover, the Sixth Circuit "disintiguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is

5

that a prisoner received inadequate medical treatment." *Id.* In the latter, "federal courts are generally reluctant to second guess medical judgments" unless the care the plaintiff received was "so woefully inadequate as to amount to no treatment at all." *Id.*

In addition, Eighth Amendment claims may be resolved on the pleadings where the complaint makes clear that, even accepting the allegations, the plaintiff can prove no set of facts in support of the claim. *See LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 347 (6th Cir. 2001) (holding that "difference of opinion" over "treatment does not state an Eighth Amendment claim"). This is particularly true where the complaint reflects that the plaintiff was indeed receiving some kind of treatment for his ailment. *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio 2007) (dismissing Eighth Amendment claim based on receipt of treatment).

In the Complaint, Plaintiff makes clear that he has received medical treatment, which has included multiple surgeries (Doc. 1-1 at 5, PAGEID #: 10 (referencing the "last operation")), seeing specialists (*id.* at 6, PAGEID #: 11 (stating that "they were actually bringing some Doctor from somewhere in Columbus to claim he was a top surgeon or something")), and undergoing tests (*id.* at 9–10, PAGEID #: 14–15 (referencing an MRI); *id.* at 11, PAGEID #: 16 (explaining that "time after time" his tests demonstrated a serious condition). (*See also id.* at 12, PAGEID #: 17 (referencing "therapy")).

Thus, Plaintiff appears to allege that Defendants violated his rights by refusing to provide him a certain type of treatment. For example, Plaintiff seems to suggest that the medical officials should have sent him to a specialist sooner. (*See id.* at 11, PAGEID #: 16) (stating that tests showed "at the very beginning that [he] had a serious condition that required a specialist to deal [his] circumstances," but Defendants "tried to prove one thing. There was nothing wrong…"). However, "the contention that [Plaintiff] was denied treatment by a specialist is . . . insufficient

to establish a constitutional violation." *Jenkins v. Mohr*, No. 2:14-cv-248, 2014 WL 4748619, at *7 (S.D. Ohio Sept. 23, 2014) ("Although Plaintiff disagrees with the timing of his referral to a specialist, that disagreement is insufficient to give rise to an Eighth Amendment claim for deliberate indifference."). Consequently, the Court **RECOMMENDS** that the Complaint be **DISMISSED** on this basis.

### 2. Personal Involvement

Further, in order to plead a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). To plead the second element sufficiently, a plaintiff must allege that each defendant had "personal involvement" in the deprivation of his rights. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted).

With the exception of Nurse Haggard and Dr. DeLaCruz, Plaintiff's Complaint fails to provide sufficient factual content or context from which the Court could infer that any of the Defendants were involved personally in any violation of his constitutional rights. On this basis, it is **RECOMMENDED** that Plaintiff's Complaint against the Defendants other than Nurse Haggard and Dr. DeLaCruz be **DISMISSED**.

To the extent that Plaintiff's allegations concern Nurse Haggard, they allege that she picked him up from a fall with others and relayed information from a doctor that "nothing was wrong" with Plaintiff. (Doc. 1-1 at 7, PAGEID #: 12). Although it is unclear why, Plaintiff alleges that he was not permitted to leave his cell while Nurse Haggard was working. (*Id.*).

Even if it was somehow improper for Nurse Haggard to move Plaintiff after his fall, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Id*. Further, conveying a doctor's opinion that "nothing was wrong" with Plaintiff and that Plaintiff was confined to his cell while Nurse Haggard was working are allegations insufficient to support Plaintiff's Eighth Amendment claim. *See Blackmore*, 390 F.3d at 895.

As to Plaintiff's allegations against Dr. DeLaCruz, he refers to her as unprofessional (*see* Doc. 1-1 at 6, PAGEID #: 11) and says he felt a "strange aura" when meeting her (*id*. at 9, PAGEID #: 14). He further states that "her assessment of [him] did not convince her enough that [he] should have any of the medications" (*id*. at 10, PAGEID #: 15), although he does not allege that the medications were taken away (*see id*.).

"[A] prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation." *DeFreeze v. Zuberi*, 39 F. App'x 137, 139 (6th Cir. 2002); *see, e.g.*, *Alspaugh*, 643 F.3d at 169 (no deliberate indifference claim where the plaintiff "would have desired more aggressive treatment" but "was at no point denied treatment"); *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim."); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain . . . does not support an Eighth Amendment claim"); *LaFlame*, 3 F. App'x at 347; *Dotson*, 477 F. Supp. 2d at 849. In

sum, nothing in Plaintiff's Complaint demonstrates that his treatment by Dr. DeLaCruz was "so woefully inadequate as to amount to no treatment at all." *See Alspaugh*, 643 F.3d at 169.

Based upon his pleadings, Plaintiff is receiving medical care, and those monitoring his medical care have had a difference of opinion on the type of care he should receive or have not, in Plaintiff's opinion, treated him professionally. For the reasons set forth above, these allegations are insufficient to state a plausible constitutional claim. It is therefore **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED**.

### III.  CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: May 8, 2017 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE